# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>UNION WORKERS CREDIT SERVICES, INC.,<br><br>　　　　　　　Defendant. | Case No. _____<br><br>**COMPLAINT** |

　　　　The Consumer Financial Protection Bureau (the Bureau) alleges the following against Union Workers Credit Services, Inc. (UWCS):

## INTRODUCTION

　　　　1.　　The Bureau brings this action under sections 1031(a), 1036(a), 1054(a), and 1055 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531(a), 5536(a), 5564(a), 5565, and under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681s(b)(1)(H). This action is based on UWCS's violations of sections 1031(a) and 1036(a)(1) of the CFPA, which prohibit unfair, deceptive, and abusive acts or practices, in connection with UWCS's offering of a general-use credit card. This action is also based on UWCS's violations of the FCRA and its implementing regulation, Regulation V, 12 C.F.R. pt. 1022, in connection with UWCS's offers of credit. 15 U.S.C. § 1681m(d); 12 C.F.R. § 1022.54(c).

## JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction because it is brought under "Federal consumer financial law," 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345.

3. Venue is proper in this district and the Dallas division because UWCS is located, resides, and does business in Dallas. 28 U.S.C. § 1391(b); 12 U.S.C. § 5564(f).

## PLAINTIFF

4. The Bureau is an independent agency of the United States charged with regulating the offering and provision of consumer-financial products and services under "Federal consumer financial laws." 12 U.S.C. § 5491(a). It has independent litigating authority, including the authority to enforce the FCRA and Regulation V. 15 U.S.C. § 1681s(b)(1)(H); 12 U.S.C. §§ 5531(a), 5564(a)-(b). The Bureau may act "through its own attorneys . . . in any action" to which it is a party. 12 U.S.C. § 5564(b).

## DEFENDANT

5. UWCS is a Texas-based for-profit corporation that is located and does business in this district. UWCS has engaged in offering or providing to consumers extensions of credit that constitute consumer-financial products or services that are covered by the CFPA. 12 U.S.C. § 5481(5), (15)(A)(i). Accordingly, UWCS is a "covered person" under the CFPA. 12 U.S.C. § 5481(6).

## FACTS

6. UWCS has been in operation since about 2004.

7. Until at least early November 2014, UWCS solicited customers by sending written direct-mail offers via the U.S. Postal Service and by maintaining a website.

8.  As described in more detail below, in both its direct-mail offers and its website, UWCS, explicitly or impliedly, offered consumers a general-use credit card, which was similar to a Visa- or MasterCard-branded credit card and allowed a consumer to access open-end credit that could be used to make purchases from many retailers unaffiliated with UWCS. UWCS calls the card it offered a "platinum card."

9.  Beginning at least by January 2011, UWCS's direct-mail offers described this "platinum card" as having a $10,000 credit limit and a 5% annual-percentage rate (APR).

10. UWCS told consumers that they would receive the platinum card if they paid a "membership fee." The membership fee was $37 for consumers who responded to direct-mail offers and $95 for consumers who enrolled through the UWCS website, which included an online-application form.

11. By UWCS's own admission, it has targeted certain types of consumers: "the average, Middle America-type hardworking individual who may have blue-collar-type jobs."

12. In the last three years alone, hundreds of thousands of consumers in the United States responded to UWCS's direct-mail offers or website application form and paid $37 or $95 membership fees to UWCS.

13. The consumers who paid membership fees to UWCS did not receive general-use credit cards. In fact, the platinum card that UWCS advertised and provided to these consumers is not a general-use credit card, but merely a paper membership card that has allowed consumers to receive closed-end, purchase-specific credit from UWCS. Consumers could use the credit offered by UWCS to purchase only items advertised and sold by UWCS through a catalog or other means.

14. Few consumers who paid the membership fee and received the UWCS platinum card ever purchased items from UWCS's catalog or otherwise availed themselves of the closed-end credit that UWCS has actually provided. Rather, during the relevant period, $37 membership fees have accounted for the vast majority of UWCS's revenue.

15. Since at least 2009, thousands of consumers have filed complaints against UWCS with law-enforcement agencies and the Better Business Bureau. Many of those complaints were forwarded to the company. In many instances, consumers complained that they believed UWCS would provide them a general-use credit card.

### UWCS's Direct-Mail Offer

16. Between January 2011 and early November 2014, UWCS used at least two versions of its direct-mail offer and sent tens of millions of these offers to consumers.

17. Both versions of the UWCS direct-mail offer used bold and capital letters to advertise, among other things, that the consumer is "pre-approved" for a "platinum card" with a 5% APR and a $10,000 credit limit, and that the offer is a "limited time offer."

18. Both versions of the UWCS direct-mail offer stated that consumers need to pay a membership fee of $37 to receive the advertised "platinum card."

19. The two versions of the UWCS direct-mail offer further stated, "You don't have to worry if you have been denied access to a VISA® or MasterCard.®" or "You don't have to worry if you have previously been denied credit by MasterCard® or VISA.®" The terms "VISA" and "MasterCard" appeared in bold text.

20. For its direct-mail offers, UWCS targeted consumers who had recently made purchases from or otherwise responded to direct-mail offers sent by other

4

companies. UWCS also targeted consumers with union affiliations and consumers who met certain criteria based on their consumer reports (also known as "credit reports").

UWCS's Website

21. Starting in approximately 2005 and lasting through at least early November, 2014, UWCS has maintained a website at www.unionworkerscreditservices.com.

22. During the relevant period, UWCS's website repeatedly referenced the credit offered by the company and drew a direct link between UWCS's products and general-use credit cards. A page titled "Union Workers Credit Services Resources: Credit Cards" provided an extensive description of how credit cards work. Following the description, the website stated: "Union Workers Credit Services provides its members special 'Members Only' catalogs and shopping services with the benefit of a low interest rate of 5% APR. JOIN NOW!"

23. UWCS's general advertisements of the UWCS services in the publicly available parts of its website did not expressly state that UWCS does not offer a general-use credit card; nor did they state that consumers could use the UWCS credit to finance *only* the purchase of products from UWCS.

24. The UWCS website's public content also explicitly or impliedly stated that UWCS was union-affiliated. The website made numerous references to unions and union workers. For example, when printed, the header on the UWCS homepage read: "Union Workers Credit Services – providing credit services to the Union Workers of America." At the top of the page, a banner included the company name, a seal, and images of a police officer, a firefighter, and medical professionals. Additional photos of workers were a central element later on the page.

5

25. Other UWCS website pages included design elements similar to those on the home page. Many of the pages were framed by the banner including the company name, logo, and photos of workers.

26. The UWCS online-application form also referenced unions. The form sought information on new enrollees' union affiliation and allowed new enrollees to select their union affiliation from a drop-down list.

27. In fact, UWCS has no affiliation with any union.

28. At various times during the relevant period, the UWCS website did not disclose that UWCS lacks a union affiliation.

<u>Prescreen Opt-Out Notices</u>

29. UWCS used consumer reports to select the recipients of both of its direct-mail offers. The recipients of UWCS's direct-mail offers did not consent to this use of consumer reports.

30. The two versions of the UWCS direct-mail offer differed with regard to disclosures about UWCS's use of consumer reports.

31. One version of the UWCS direct-mail offer included the following statement at the top of the page: "To opt-out of prescreened credit opportunities in the future you may call 1-888-567-8688. Details below in the PRESCREEN & OPT-OUT-NOTICE." On the bottom of that direct-mail offer, the following language appeared:

> You have been approved for this Platinum Card offer based on among other things, information in your Credit Report. You were approved because you satisfied certain criteria, although this offer may be withdrawn subject to your continuing qualification. To be excluded from such credit opportunities in the future, call TransUnion at 1-888-567-8688 or write TransUnion Opt-Out Request, PO Box 505, Woodlyn, PA 19094-0505 or visit www.optoutprescreen.com. The credit amount referenced above has already been established as your pre-approved credit limit and your new Platinum activation.

32. The other version of the UWCS direct-mail offer did not include statements similar to those described in the prior paragraph.

### Prior Government Actions

33. UWCS has been the subject of multiple government investigations over the years, yet has failed to stop its deceptive practices.

34. In 2005, the U.S. Postal Service (USPS) sued UWCS for misrepresentations contained in its direct-mail offers. The USPS alleged that UWCS falsely represented that it offered a general-use credit card and that UWCS was union-affiliated. The company and USPS entered into a settlement agreement.

35. In 2013, the New York Attorney General's office sued UWCS for misrepresentations, including falsely representing that it offered a general-use credit card and that UWCS was union-affiliated. UWCS entered into a settlement agreement with the New York Attorney General's office in which the company agreed to stop advertising and offering credit or financing services to New York customers. The company also agreed to provide refunds to certain consumers and pay $50,000 in penalties, fees and costs.

36. In 2011, the Nevada Attorney General's office issued a consumer alert regarding UWCS.

37. Despite these government actions, at least until early November 2014, UWCS has failed to significantly alter or amend its deceptive practices.

## COUNT ONE

### (UWCS's Violations of the CFPA – Deception)

38.     The allegations in paragraphs 1-37 are incorporated here by reference.

39.     In connection with the advertising, marketing, promoting, offering for sale, sale, or providing of credit, UWCS has represented, expressly or impliedly, that consumers would receive general-use credit cards if they enrolled and paid UWCS's membership fee.

40.     In fact, UWCS has not provided a general-use credit card to any consumer. UWCS has provided only paper membership cards allowing consumers to purchase items advertised by UWCS in its catalog or through other means and to receive closed-end, purchase-specific credit from UWCS that can be used to fund purchases only through UWCS.

41.     Therefore, UWCS's practices are deceptive under the CFPA. Because UWCS is a "covered person," its conduct is unlawful under sections 1031(a) and 1036(a)(1) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1).

## COUNT TWO

### (UWCS's Violations of the CFPA – Deception)

42.     The allegations in paragraphs 1-37 are incorporated here by reference.

43.     In connection with the advertising, marketing, promoting, offering for sale, sale, or providing of credit, UWCS has represented, expressly or impliedly, that it is affiliated or associated with labor unions.

44.     In fact, UWCS has no union affiliation or association.

45. Therefore, UWCS's practices are deceptive under the CFPA. Because UWCS is a "covered person," its conduct is unlawful under sections 1031(a) and 1036(a)(1) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1).

## COUNT THREE

(UWCS's Violations of the FCRA and Regulation V – Pre-Screen Opt-Out Notice)

46. The allegations in paragraphs 1-37 are incorporated here by reference.

47. In numerous instances, UWCS has used consumer reports on consumers without those consumers' consent and in connection with credit transactions that were not initiated by the consumer.

48. UWCS's direct-mail offers were written solicitations for the credit transactions described in the above paragraph.

49. In numerous instances, UWCS has failed to provide any disclosure regarding its use of consumer reports, including the short and long notices that Regulation V, 12 C.F.R. § 1022.54(c), requires.

50. Therefore, UWCS's conduct is unlawful under the FCRA, 15 U.S.C. § 1681m(d), and Regulation V, 12 C.F.R. § 1022.54(c).

## DEMAND FOR RELIEF

WHEREFORE, the Bureau requests that the Court:

a. permanently enjoin UWCS from committing future violations of the CFPA, 12 U.S.C. §§ 5531, 5536, the FCRA, 15 U.S.C. § 1681m(d), and Regulation V, 12 U.S.C. § 1022.54;

b. grant additional injunctive relief as the Court may deem just and proper;

c. order UWCS to pay restitution to consumers harmed by its unlawful conduct;

  d.  order UWCS to disgorge all ill-gotten gains;

  e.  impose on UWCS a civil penalty;

  f.  award costs against UWCS; and

  g.  award additional relief as the Court may determine to be just and proper.

December 17, 2014      Respectfully submitted,

              ANTHONY ALEXIS
              *Acting Enforcement Director*

              JEFFREY PAUL EHRLICH
              *Deputy Enforcement Director*

              JOHN WELLS
              *Assistant Litigation Deputy*

              _s/Christina S. Coll_____

              CHRISTINA S. COLL (CA Bar No. 250712)
              *Enforcement Attorney*
              Consumer Financial Protection Bureau
              1700 G Street NW
              Washington, D.C. 20552
              Telephone: (202) 435-7843
              Facsimile: (202) 435-7329
              E-mail:   christina.coll@cfpb.gov

              *Attorney for Plaintiff Consumer*
              *Financial Protection Bureau*